**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

TESORO REFINING & MARKETING
COMPANY LLC, MARATHON PE-
TROLEUM COMPANY LP,

    *Plaintiffs*,                                   **Case No. 5:25-CV-01787-JKP**

v.

AK INC., REBEL LAND AND DE-
VELOPMENT LLC, SAMMER ANABI,
RAWA ANABI,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Tesoro Refining & Marketing Company LLC and Marathon Petroleum Company LP's ("Plaintiffs") Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*). Defendants AK Inc., Rebel Land and Development LLC, Sammer Anabi, and Rawa Anabi ("Defendants") filed a Response, (*ECF No. 11*), to which Plaintiffs filed a Reply, (*ECF No. 17*). The Court held a full evidentiary hearing on this matter, (*see* Min. Ent. Jan. 8, 2026), and following the hearing the parties submitted Supplemental Briefings, (*ECF Nos. 34, 36*). After carefully considering the arguments in the above-mentioned filings, the evidence before the Court (including testimony from the hearing), and the relevant legal authority, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*), will be denied.

## BACKGROUND

This action arises from a dispute concerning the parties' rights and obligations under a Multi-Site Throughput Agreement ("the Agreement") dated December 15, 2015. *ECF No. 2-2.*

Per the Agreement, its purpose is to set "forth the terms and conditions under which [Defendant AK Inc.] will provide services, equipment, and storage in connection with the sale of [Plaintiff Tesoro's] Motor Fuel Products . . ." *ECF No. 2-2 at 2.* The Agreement has a set term of one-hundred-and-twenty (120) months, expiring January 31, 2026, unless a contractual option to extend the set term for an additional two years is exercised. *ECF No. 2 at 4; ECF No. 11 at 2.* The dispute in this case is whether Plaintiff Tesoro timely exercised the option. Plaintiff Tesoro asserts it did, and Defendants claim Plaintiff Tesoro did not. *ECF No. 2 at 4–5; ECF No. 11 at 2–6.*

To exercise the option, the Agreement requires written notice to be provided to Defendant AK Inc. at least twelve (12) months before the expiration date. *ECF No. 2-2 at 5.* Plaintiff Tesoro claims it exercised the option on November 20, 2023, when Ms. Wilson sent Defendants an extension notice (on Plaintiff Marathon Petroleum Company LP letterhead). *ECF No. 2 at 4–5.* Defendants position is, while they acknowledge Plaintiff Marathon Petroleum Company LP acquired Plaintiff Tesoro in 2018, "[Plaintiff] Marathon's purported renewal could only be effective if [Plaintiff] Marathon [was] the lawful assignee[] of [Plaintiff] Tesoro's rights under [the Agreement] . . . [and] Plaintiffs have no proof such an assignment ever occurred." *ECF No. 11 at 2–7.*

After efforts to resolve the issue failed, on December 15, 2025, Plaintiffs filed this action in the Texas Business Court, Division 4B. *ECF No. 1-2.* Two days later, on December 17, 2025,

2

Defendants filed their Notice of Removal to this Court. *ECF No. 1*. The same day, Plaintiffs filed the instant Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*).

The Court held a full evidentiary hearing on this matter, (*see* Min. Ent. Jan. 8, 2026), and following the hearing the parties submitted Supplemental Briefings, (*ECF Nos. 34, 36*).

Therefore, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*), is fully briefed and ripe for review.

## **LEGAL STANDARD**

"A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," therefore "[t]o obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction*." Horner v. Am. Airlines, Inc.*, No. 3:17-CV-00665, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (cleaned up).

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). This is especially so when the movant seeks mandatory relief compelling action beyond maintaining the status quo—*i.e.*, "specific performance" of a contract. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Such relief is "particularly disfavored," and only warranted when "the facts and law clearly favor the moving party." *Id.*.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it

3

will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## ANALYSIS

Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*), requests the Court issue a Temporary Restraining Order, followed by a Preliminary Injunction, and upon final judgment a Permanent Injunction, enjoining Defendants from:

(1)   terminating or failing to perform any obligation under the Agreement and requiring Defendants to continue honoring all contractual duties through trial;

(2)   marketing or negotiating the Agreement locations with third-parties in any manner inconsistent with Plaintiffs' rights under the extended term;

(3)   interfering with Plaintiffs' contractual rights, including by sending communications that misstate the validity of the Extension; and

(4)   inducing any third-party to disregard Plaintiffs' rights under the Agreement.

*Id. at 24*. The Court will address each preliminary injunction factor below.

## I.   Likely Success on the Merits

Plaintiffs contend they are likely to succeed on the merits of their anticipatory breach, breach of contract, and promissory estoppel causes of action. *ECF No. 34 at 6*. Defendants argue to the contrary on the basis "Plaintiffs still fail to show a *prima facie* case on any cause of action." *ECF No. 36 at 4*. For the purposes of the instant Motion, the Court assumes *arguendo* Plaintiffs have shown a likelihood of success on the merits, and finds the first preliminary injunction factor weighs in Plaintiffs' favor.

Plaintiffs' evidence indicates Plaintiff Tesoro timely exercised the option on November 20, 2023, when Lisa D. Wilson ("Ms. Wilson") sent Defendants an extension notice. *ECF No. 1-1; ECF No. 1-3*. The language in the extension notices states "please take Notice that the Com-

pany hereby elects to exercise the Option to extend the Term for an additional two (2) years." *ECF No. 1-3 at 2*. Ms. Wilson's testimony and the record reflect conversations with the Defendant Anabis, that the Defendant Anabis never raised concerns about the adequacy of the extension notice, and that payments were sent as usual. *ECF No. 32 at 19–20, 70*. The record also reflects at the last moment Defendants raised this issue. *ECF No. 1-5; ECF No. 1-6; ECF No. 32 at 32–33*.

This is a preliminary determination with respect to the merits of whether Plaintiff Tesoro timely exercised the option on November 20, 2023, when Ms. Wilson sent Defendants an extension notice. It appears Plaintiffs have presented a solid case for breach of the Agreement, which will ultimately have to be decided by a jury.

## II.    Irreparable Harm

Plaintiffs claim they will suffer irreparable harm if Defendants are not enjoined due to "disruption to operations," "potential loss of rights in real property," and "harm to brand and goodwill." *ECF No. 34 at 21–24*. Defendants respond Plaintiffs will not suffer irreparable harm because an adequate remedy at law exists, specifically monetary damages. *ECF No. 36 at 13–22*.

Plaintiffs must carry the burden on this element, and to do so "must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue." *Randolph v. Nationstar Mortg., LLC,* No. 2:11-CV-02165, 2012 WL 2450016, at *4 (E.D. La. June 27, 2012) (citing *White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir. 1989)). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985). Ultimately, therefore, to obtain

injunctive relief the moving party must show that irreparable harm is likely.[1] Moreover, under Fifth Circuit precedent, "a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire,* 647 F.3d 585, 600 (5th Cir. 2011).

Thus, Plaintiffs must demonstrate that monetary damages are an insufficient remedy and that their alleged harms are not just possible, but likely. Here, Plaintiffs do not carry their burden. The Court addresses each of Plaintiffs' alleged harms in turn.

### A.    Disruption to Operations

First, Plaintiffs argue they will be irreparably harmed due to a:

[S]ubstantial impact to Plaintiffs' operations including distribution and supply with, among other things, substantial scheduled volumes of fuel supply for the approximately 50 Nevada Locations needing to be replaced or redirected; and

[C]ompression of the activities and mitigation measures that would have been done in anticipation of the Agreement's termination at the end of the extended term into an impossible three-week timeline . . .

*ECF No. 34 at 20–22*. As evidence of these alleged harms, Plaintiffs point to (1) Ms. Wilson's Declaration, (*ECF No. 2-1*); (2) the Agreement, (*ECF No. 2-2*); and (3) Ms. Wilson's testimony at the hearing, (*ECF No. 32*).

Upon review of the evidence, in this regard the Court finds Plaintiffs fail to offer sufficient evidence of intangible harm that cannot be reduced to monetary damages. As stated above, speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) (citing *Carter v. Heard,* 593 F.2d 10, 12 (5th Cir. 1979)); *see also Shor v. Pelican Oil & Gas Mgt., LLC*, 405 S.W.3d 737, 750 (Tex. App.—Hous. [1st Dist.] 2013) ("A temporary injunction may not . . . be granted solely upon the mere speculation of injury, based only on fear or apprehension.")

---

[1] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("A court may only issue injunctive relief if irreparable harm is 'likely'; granting an injunction based on a mere possibility of remote injury is insufficient, even if a [movant] has shown a nearly certain likelihood of success.").

For example, Plaintiffs argue a finding of irreparable harm is necessary due to "disruption of the transportation/offtake matrix tied to Plaintiffs' Salt Lake City and Los Angeles refineries." *ECF No. 34 at 21*. At the hearing, however, when Defendants' counsel questioned Ms. Wilson about the Salt Lake City refinery, she did not testify the agreement was *irreplaceable*—but instead testified the agreement was *not easily replaceable. See ECF No 32 at 89*. Further, when questioned about at-risk downstream obligations, she testified:

> From a downstream obligations perspective, I would just suggest that we would need to uncover the specifics. But generally speaking, we have supply arrangements, crude arrangements. We plan maintenance schedules around various catalysts and those sorts of things. So if the product isn't being placed there and not able to be placed, we have a significant change in the way we're operating our business. And it would definitely have an impact to our other relationships.

*Id. at 89–90*. This testimony lacks specificity and, in addition, Ms. Wilson was unable to state what contracts and entities would be impacted by any disruption to operations. *Id. at 126*–128.

Accordingly, based on the record before the Court, including these examples and others, disruption to operations does not substantiate the granting of an injunction.

**B.     Potential Loss of Rights in Real Property**

Second, Plaintiffs argue they will be irreparably harmed due to:

[L]oss of the Nevada Locations, which were strategically selected and secured;

. . .

[L]oss of the Wholesale Supply [Right of First Refusal]; [and]

[L]oss of Plaintiffs' assigned real property interests in the unique and strategically-selected Nevada Locations, including the Real Property [Right of First Refusal] [.]

*ECF No. 34 at 20–22*. As evidence of these alleged harms, Plaintiffs point to (1) the Agreement, (*ECF No. 2-2*); and (2) Ms. Wilson's testimony at the hearing, (*ECF No. 32*).

**1.     Plaintiffs' "Unique Business Locations" Argument**

7

Upon review of the evidence, in this regard the Court finds Plaintiffs again fail to offer sufficient evidence of intangible harm that cannot be reduced to monetary damages.

For example, Plaintiffs describe the Nevada Locations as "Unique Business Locations" that Plaintiffs selected specifically "based on visibility, traffic patterns, and market saturation," to argue losing these sites evidences irreparable harm. *ECF No. 34 at 22*. Plaintiffs claim "[t]hese [approximately 30 sites that fall within the Agreement] are not interchangeable," however, Ms. Wilson—Plaintiffs' sole witness—did not testify as to how or why that is the case. *Id.* (citing *ECF No. 32 at 84–85, 90–91*).

Accordingly, based on the record before the Court, Plaintiffs' "Unique Business Locations" argument also does not substantiate the granting of an injunction.

### 2.　Plaintiffs' "Right of First Refusals" Argument

Next under the "potential loss of rights in real property" umbrella, Plaintiffs argue losing two purported right of first refusals evidences irreparable harm. *ECF No. 34 at 24–27*. Plaintiffs point to a "Real Property Right of Refusal,"[2] (*ECF No. 2-2 at 85*), and a "Wholesale Supply Right of First Refusal to Supply Agreement,"[3] (*ECF No. 2-2 at 133–137*). *ECF No. 34 at 24–27*.

Upon review of the evidence, in this regard the Court finds Plaintiffs again fail to offer sufficient evidence of intangible harm that cannot be reduced to monetary damages. Because the threatened loss from a failure to exercise the right of first refusal is neither imminent nor concrete, it is insufficient to qualify as an irreparable harm. *Terex Corp. v. Cubex Ltd.*, No. 3:06-CV-1639, 2006 WL 3542706, at *11 (N.D. Tex. Dec. 7, 2006). While Plaintiffs' inability to exercise

---

[2] The "Real Property Right of Refusal" provides Tesoro a right of first refusal to purchase the Nevada  Locations. *ECF No. 2-2 at 85; see also ECF No. 34 at 25*. The rights pursuant to this ROFR "are triggered by any Offer . . . for any of the Property." *ECF No. 2-2 at 85*.

[3] The "Wholesale Supply Right of First Refusal to Supply Agreement" provides Tesoro a right of first refusal to supply fuel products. *ECF No. 2-2 at 133–137*. The rights pursuant to this ROFR are triggered by "any bid or offered . . . from a third party for the supply of [f]uel [p]roducts . . . " *Id. at 133*.

the right of first refusals is persuasive to the extent the loss would be difficult to measure, it is insufficient because the alleged injury is speculative at best and, moreover, involves no imminent threat. *Id*. Plaintiffs allude to potential suitors seeking to do business with Defendants, but without evidence of this the extraordinary remedy of issuing a preliminary injunction is not appropriate. *See ECF No. 2-7 at 2; ECF No. 2-9 at 3*.

Accordingly, based on the record before the Court, Plaintiffs' "Right of First Refusals" argument also does not substantiate the granting of an injunction.

### C.    Harm to Brand and Goodwill

Third and finally, Plaintiffs argue they will be irreparably harmed due to:

[L]loss of Plaintiffs' ARCO® brand presence at approximately 30 of the Nevada Locations, which were strategically selected for location and product placement in conjunction with Plaintiffs' branding/trademark strategy; [and]

[L]oss of 40% of Plaintiffs' ARCO® brand presence in the Las Vegas market [.]

*ECF No. 34 at 20–22*. As evidence of this alleged harm, Plaintiffs point to (1) Ms. Wilson's Declaration, (*ECF No. 2-1*); and (2) Ms. Wilson's testimony at the hearing, (*ECF No. 32*).

Upon review of the evidence, in this regard the Court finds Plaintiffs again fail to offer sufficient evidence of intangible harm that cannot be reduced to monetary damages. While courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable. See *Millennium Restaurants Group, Inc. v. City of Dallas,* 181 F.Supp.2d 659, 666 (N.D. Tex. 2001).[4]

---

[4] *See also Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-00571, 2015 WL 9876952, at \*5 (E.D. Tex. Dec. 23, 2015), *R. & R. adopted*, No. 4:15-CV-00571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) ("[W]hile reputational injury can be used to establish irreparable harm in certain circumstances, the showing of reputational harm must be concrete and corroborated, not merely speculative."); *Auburn Investments, Inc. v. Lyda Swinerton Builders, Inc.*, No. 04-08-00067-CV, 2008 WL 2923643, at \*3 (Tex. App.—San Antonio July 30, 2008) ("Although the loss of business goodwill may be sufficient to show irreparable injury for purposes of a temporary injunction, such a loss cannot be left to speculation because, at a minimum, opinions must be based on objective facts, figures or data from which the loss of goodwill may be ascertained.")

For example, Plaintiffs cite Ms. Wilson's testimony at the hearing, but the testimony does not provide evidence Defendants had any established customer base or goodwill at the time they applied for injunctive relief. *Dickey's Barbecue Restaurants, Inc. v. GEM Inv. Group, L.L.C.*, No. 3:11-CV-02804, 2012 WL 1344352, at *5 (N.D. Tex. Apr. 18, 2012). This leads the Court to believe Plaintiffs' harm is speculative and to question the imminence of Plaintiffs' harm.

Accordingly, based on the record before the Court, Plaintiffs have not persuaded the Court that they will suffer irreparable harm in terms of lost customer goodwill or lost business.

### III.    Remaining Preliminary Injunction Factors

Because Plaintiffs have failed to establish any imminent, non-speculative injury, Plaintiffs have not carried their burden to show that they are likely to be irreparably harmed in the absence of a preliminary injunction. In the Fifth Circuit, "preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four-prong test for obtaining the injunction." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006). Therefore, a preliminary injunction is not warranted.

Although the Court is finding there is not sufficient evidence of irreparable harm, the Court is aware of the disruption to Plaintiffs' business and that a lot of effort went into establishing the Nevada Locations. Still, it is the Court's view the harm here can be calculated and redressable by a monetary award.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (*ECF No. 2*), is **DENIED**.

It is so ORDERED.
SIGNED this 22nd day of January, 2026.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE